WILLIAM RAFFERTY, ADMINISTRATOR, &c., OF JULIETTA RAFFERTY, DECEASED, v. ERIE RAILROAD COMPANY.

Argued February 26, 1901—Decided June 10, 1901.

1. While the railway company at a highway crossing has the prior right of passage as against the traveler, still both are charged with the mutual duty of exercising reasonable care to prevent injury. Each must make reasonable and proper efforts, in view of the circumstances, to foresee and avoid collisions.

2. The plaintiff's intestate, while riding with the plaintiff, who was her brother, was killed in a collision with defendant's railway train in a country district at a public crossing. The occupants of the carriage did not see or hear the train until they were in the act of crossing. The train was traveling at a speed of thirty to forty miles an hour. The situation was such that the fireman, from his side of the cab, saw the carriage stop for a few moments about ten or fifteen feet from the track, and then start to cross. He failed to inform the engineer, who, from his side of the cab, could see nothing until the horse's head appeared in view, and then he applied the emergency brake. This checked the speed of the train so that the collision was almost avoided, the engine striking the hind wheel of the carriage as it was passing the last rail.

3. Upon the trial of the suit against the company, motion was made to nonsuit and to direct a verdict for want of proof of negligence as against the company. The motions were denied by the trial judge, who submitted to the jury, under proper instructions, the question of the fireman's negligence, and also the question whether upon the proofs the statutory signals were given. The jury returned a verdict for the plaintiff. Upon a rule to show cause why a new trial should not be had, for error in the rulings, and also on the grounds that the verdict was against the clear weight of the evidence, and was also excessive—*Held*—

1. That there was no error in the rulings, nor could the verdict be disturbed as being against the clear weight of the evidence.

2. That the damages being limited by the statute to the pecuniary loss sustained by the next of kin, the verdict of $5,000, under the evidence, was excessive.

On rule to show cause why the verdict for plaintiff should not be set aside.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, COLLINS and HENDRICKSON.

For the plaintiff, *Michael Dunn.*

For the defendant, *Corbin & Corbin.*

The opinion of the court was delivered by

HENDRICKSON, J. A new trial is sought, under the defendant's rule, on the grounds that the trial judge erred in refusing motions to nonsuit and to direct a verdict; that the

verdict was against the clear weight of the evidence, and also that the verdict was excessive.

The motion to nonsuit was based upon the single ground that no pecuniary loss had been shown to the next of kin. Its refusal was clearly right. The more serious question arose in the disposition of the motion to direct the verdict.

The plaintiff's intestate, Julietta Rafferty, who was his sister, was killed by a collision of one of the defendant's trains with the carriage of the plaintiff, in which she was riding, with her brother, as a passenger, at the Singac crossing of the Pompton turnpike, in Passaic county. This suit was brought under the statute of this state which limits the amount of damages to be recovered in case of death caused by wrongful act, neglect or default to the pecuniary injury resulting from such death to the wife and next of kin of the deceased. There was another suit by the plaintiff, brought in his own behalf, against the defendant for the personal injury he suffered from this accident, and both of these actions were tried together. In the latter case the learned trial judge directed a verdict for the defendant, on the ground of contributory negligence, a defence which was not raised in this case, because the deceased was only a passenger, and the negligence of the driver was not imputable to her. The only question, then, here is, does the evidence tend to show negligence on the part of the defendant or its agents, and is the proof sufficient in law to sustain the verdict? A short rehearsal of the facts is necessary to illustrate the points in question.

The defendant's road and the Pompton turnpike cross each other at an angle somewhat acute, the angle being about twenty-four degrees. The train was eastbound, on its way from Greenwood Lake to Jersey City, and was running in a southerly direction at the point in question. The plaintiff was also driving in a southerly direction along the pike, on his return from a pleasure drive from his home in the city of Paterson. The day was Sunday, May 28th, 1899, and the hour was six twenty-six in the afternoon. The carriage was a two-seated surrey, with canopy top, without curtains, drawn

by a single horse. The deceased was seated in the second seat, with a niece of hers. The niece's husband, with their baby, occupied the front seat with the driver.

Disregarding, for the present, the evidence as to whether the defendant failed in its statutory duty to blow the whistle or ring the bell the required distance before reaching the crossing, we will look at the question raised upon the trial whether, notwithstanding the negligence of the driver, there was evidence tending to prove that the accident, or its fateful consequences, might have been avoided by the timely action of the company's servants in checking the speed of the train. The plaintiff testified that he drove along to within fifty or seventy-five feet of the track. "Then," he said, "we stopped to listen, to see if we heard a train; we didn't hear any, and we went on further." He further testified that he could not see across to the track which was on his right, on account of the brush and the trees; that he drove on, with his horse on a walk, to within about ten feet of the railroad; that they there stopped again and looked and listened; that not seeing or hearing any train, he urged the horse on; that when the horse was on the track, and probably a part of the wagon, those with him screamed, "There is the train," and he struck the back of the horse with the lines; that he supposed the horse went forward, and just at that instant the train struck the back part of the wagon, throwing the occupants down the road. As to the distance of the engine from him when he first saw it, he said he could not tell; it appeared to be right on top of them; it might have been one hundred feet away. The horse was on a brisk walk when they started across. The nephew substantially corroborated this testimony. He could not tell, however, the distance of the engine from them when he first saw it.

The engineer and fireman were both sworn as witnesses. The fireman testified that he was sitting on the left side of the cab of the engine, looking out, with his hand on the bell cord; that when about one thousand feet from the crossing he saw this wagon coming down the road, the horse on a trot; that it slackened up near the crossing, and probably ten or

fifteen feet from the crossing it stopped; that he did not warn the engineer then, but thought they were going to stand there; that all in a second the man who was driving hit the horse on the back with the reins and started off, and the engineer saw them at that time and applied the brakes. He said the engineer immediately applied the brakes as soon as he saw the horse's head. He admitted it was his duty, as fireman, under the rules of the road, to look out for obstructions and to notify the engineer immediately on seeing them. He also answered, upon cross-examination, as follows:

"*Q.* When they started to move towards the track, were you satisfied he was going over?

"*A.* Well, I kind of thought he was; I turned right around; the horse had got far enough for Mee [the engineer] to see him.

"*Q.* That is the only excuse you have got?

"*A.* Yes, sir."

The engineer testified that his place was on the right-hand side; that before the accident he was looking straight ahead; that the first he saw was the horse's head; that when he saw the horse and wagon just ahead of him he immediately applied the emergency; that after applying it they ran about the distance of five or six cars. He further testified that the fireman was in his place on the left side, looking out, and that he had a better opportunity to see than he (the engineer) had; that the fireman gave him no word of anything being on the crossing; that he (the engineer) could see the crossing, but not the public highway; that he could not see anything coming to this crossing; that he could have stopped the train, at the speed it was going, in two hundred and fifty or three hundred feet if he had discovered an object on the crossing.

It is contended, with considerable force, by defendant's counsel that there is here presented no case from which to infer the fireman's negligence; that as soon as he saw the driver start his horse the engineer saw the horse and acted; that no notice from the fireman was necessary or could have helped the situation; that, at so short a distance, the result

was inevitable. But are the premises thus assumed so clearly established as to leave nothing for the jury? What was the distance of the train away when the fireman saw the carriage start to cross? It is true the fireman says it seems to him they were forty feet away—thirty or forty feet—at that time; and the engineer says when he saw the horse's head, which must have been somewhat later, they could not have been over thirty or forty feet away; but might not the jury have found, from all the facts and circumstances, that the distance was really greater, and that if the fireman had immediately notified the engineer when he saw the danger, the speed might have been checked so as to have allowed the carriage to pass over in safety?

The gravity of this question is made apparent by the engineer's testimony. He said the engine struck the back wheel of the wagon, and that the part that struck it was the next to the last slat on the pilot on his side, which was on the right, and that if it had been two feet further over he would have cleared. He further testified:

"*Q.* Another step would have cleared him?

"*A.* Yes, sir; I think another step or two would have cleared him."

It seems plain from the evidence that the horse had to travel, in thus passing obliquely across the track, a distance of thirty-five feet to the point he had reached at the time of the collision. The plaintiff's evidence is that the horse traveled on a brisk walk until they saw the train, and then the evidence is that the horse went on a trot until the carriage was struck. While the horse was traveling this distance, what distance must the train have traveled, going, as it was, at the rate of from thirty to forty miles an hour? Might not a jury reasonably answer that the train would travel in the same period at least eight or ten times as far as the horse did?

I think, therefore, that the question of the fireman's negligence, as a proximate cause of the collision, was fairly raised by the testimony, and was properly submitted by the learned trial judge to the jury. He charged it to be the duty of the

engineer and fireman, if they see that there is possible danger of collision, to exercise reasonable diligence and reasonable care to avoid it. That such a duty devolves, under the law, upon the company's servants there can be no question.

The law is that while at highway crossings the railway company has the prior right of passage as against the traveler, still both parties must exercise care and diligence in regard to their respective duties, and are charged with the mutual duty of exercising reasonable care to prevent injury. Each must make reasonable and proper efforts, in view of the circumstances, to foresee and avoid collisions, and each may, to a limited extent, rely upon the other to exercise such ordinary care. *3 Ell. R. R.* 1153, and cases.

Every precaution should be used by both the drivers of the train and persons traveling in their own conveyances to guard against coming in contact. *Runyon v. Central Railroad Co.,* 1 *Dutcher* 556.

Upon the question of whether the proof of the alleged failure to give the statutory signals the required distance was sufficiently made out, I need only say that while we recognize the strength of the defendant's case upon that point, still we feel unable to say that a verdict for the plaintiff, upon the ground of such failure, would be so against the clear weight of the evidence that it should be set aside. We think, therefore, that the motion to direct a verdict was properly refused.

We think, however, that the damages found by the jury are excessive. The deceased was a single woman, forty-five years of age, who kept house for her three brothers and a sister, who were all single, doing the housework. Her compensation was her board, clothing, spending money and a share in the savings of the family. The damages must be limited to what her services were likely to be worth to her next of kin over and above what she was receiving from them. We think, under all the circumstances, that $2,500 would be the limit of a proper assessment of damages in this case. If the plaintiff will accept a reduction to that amount, the verdict may stand; otherwise the rule to show cause will be made absolute.